UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES JACKSON, | ) | Case No. 1:21-cv-1679 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Charles Jackson spent over 27 years in prison for a crime he did not commit. In this civil action, he comes into federal court seeking to recover damages for the constitutional violations he alleges resulted in his wrongful conviction. Plaintiff sues the City of Cleveland based on the conduct of the police officers he alleges violated his constitutional rights. Arguing that the complaint contains boilerplate allegations that fail to plead facts from the relevant time frame, the City of Cleveland moves for a judgment on the pleadings. For the reasons that follow, the Court **DENIES** the motion.

### STATEMENT OF RELEVANT FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the Court must on the motions before it, Plaintiff bases his claims on the following relevant facts.

In 1991, Charles Jackson was convicted for a murder he did not commit. (ECF No. 1, ¶ 1, PageID #2.) He spent over 27 years in prison before his exoneration in 2019. (*Id.*, ¶ 2.)

In his complaint, Plaintiff names as Defendants ten current or former Cleveland police officers in their individual capacities, among others. (*Id.*, ¶ 9, PageID #3–4.) Against these Defendants, Plaintiff asserts various causes of action based on alleged violations of Mr. Jackson's constitutional rights, including *Brady* violations (Count 1), fabrication of evidence (Count 2), unconstitutional identification procedures (Count 3), malicious prosecution (Count 5), false arrest (Count 4) denial of access to courts (Count 6), and failure to intervene (Count 7). (*Id.*, ¶¶ 260–357, PageID #45–57.)

Against the City of Cleveland, Plaintiff alleges supervisory liability in Count 8 based on the alleged conduct of the police officers and in Count 9 a claim under *Monell v. New York City Department of Social Services*, 426 U.S. 658 (1978). (ECF No. 1, ¶¶ 341–54, PageID #58–60.) In a section of the complaint titled "Defendant City of Cleveland's Policies and Practices" and spanning some ten pages, Plaintiff makes allegations dating back to 1966, with specific reports and documentation from 1966, 1973, 1974, and 1975. (*Id.*, ¶¶ 214, 215, 219 & 221, PageID #33–35 & #36–37.) Further, the complaint cites another wrongful conviction case to support the allegations that the City of Cleveland had policies or practices that resulted in constitutional violations. (*Id.*, ¶ 225, PageID #38.) That case involved conduct from 1975 and earlier. *See Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

Five paragraphs of the complaint follow the allegation that "Defendant City and [the Cleveland Police Department] have a long history—from well before Jackson's prosecution and continuing beyond his conviction—of failing to supervise, investigate, and discipline allegations of officer misconduct." ([ECF No. 1](#), ¶ 227, PageID #39.) These five paragraphs include allegations of complaints against "a detective" for false testimony and beating a detainee (*id.*, ¶ 228), a failure to take action following one officer's report of another fabricating evidence (*id.*, ¶ 229), a pattern and practice of using excessive force, including to coerce false confessions (*id.*, ¶ 230), and a failure to take action in response to such wrongful conduct (*id.*, ¶ 231). This litany concludes with an allegation that, at all relevant times, City "knew of these problems and allowed them to continue" and that the injuries of which Plaintiff complains "were a highly predictable consequence of the[se] failure[s]." (*Id.*, ¶ 232, PageID #40.)

Further, the complaint alleges that, as a result of the City's policies and practices, the police officers involved in violating Mr. Jackson's rights came to believe that they could violate a person's civil rights with impunity, including causing an innocent person to stand trial for serious charges. (*Id.*, ¶¶ 237–39, PageID #41.) Despite alleged actual knowledge of these police abuses, Plaintiff pleads that the City failed to act. (*Id.*, ¶ 241, PageID #42.) To dispel any doubt, Plaintiff alleges that "[t]he constitutional violations that caused Jackson's wrongful conviction were not isolated events." (*Id.*, ¶ 242.) He also alleges that policymakers at the City "consciously approved" these policies and practices. (*Id.*, ¶ 244.)

3

## AMENDMENT

As a threshold matter, Plaintiff closes his opposition to the City's motion with a request for leave to file an amended complaint (ECF No. 40, PageID #429), which he attaches to the motion (ECF No. 40-1). With the proposed amendment, Plaintiff seeks to cure any deficiency in pleading that the City identifies by adding allegations of continuing practices through additional time periods relevant to this case. (ECF No. 40, PageID #429–30.) The City argues that the amendment is futile. (ECF No. 41, PageID #504.) But the Court need not consider this argument or Plaintiff's argument for amendment, which is not procedurally proper.

Procedurally, Rule 15 generally directs a court to give leave to amend freely. Fed. R. Civ. P. 15(a)(2). However, perfunctory amendment requests at the end of a brief are inadequate. *See Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011). "[A] request for leave to amend, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is not a motion to amend." *Alexander v. Eagle Mfg. Co.*, 714 F. App'x 504, 511 (6th Cir. 2017) (cleaned up). And an amendment request in a brief opposing a Rule 12 motion does not constitute a proper motion. *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000).

Plaintiff has not separately moved for leave to amend. Nor did Plaintiff amend as of right under Rule 15(a)(1)(A). Therefore, the Court has no occasion to consider Plaintiff's request to amend or the amendment itself, and the Court proceeds to

4

analyze the City's motion for judgment on the pleadings based on the allegations in the original complaint.

## ANALYSIS

Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Therefore, the Court applies the same standards it set forth in its Opinion and Order dated February 22, 2022 (ECF No. 31).

In short, on a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler*, 862 F.3d at 575). While "the court's decision rests primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (cleaned up). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

5

I. **Plaintiff's *Monell* Claim**

Under Section 1983, a municipality cannot be held vicariously liable on a theory of *respondeat superior* for a violation of an individual's constitutional rights that its officers, employees, or agents commit. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694). Instead, a municipality has liability for a policy or practice that caused a constitutional injury "through its deliberate conduct." *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). Even then, that policy or practice must have been "the 'moving force' behind the injury alleged" and must have "intentionally" deprived the plaintiff of a federally protected right. *Id.* at 404–05.

Local governing bodies can be sued under Section 1983 only where an official policy or custom causes the alleged constitutional violation. *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Monell*, 436 U.S. at 690–91). An official policy includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . ." *Johnson*, 908 F.2d at 1285 (quoting *Monell,* 436 U.S. at 690). In contrast, a custom "has not received formal approval through . . . official decisionmaking channels." *Id.* (quoting *Monell* at 690–91). "Before a custom can be the basis for a civil rights violation, the custom must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1004 (6th Cir. 1994) (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Monell*, 436 U.S. at 691)).

Under *Monell* and its progeny, there are four ways a plaintiff can demonstrate a policy, practice, or custom that could allow for municipal liability:

6

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). The first two are based on the illegality of the municipal law, policy, or practice at issue—whether ordinances, other official enactments, or the appropriate official's ratification. *Pembauer v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *Feliciano*, 988 F.2d at 655. The latter involve deliberate indifference to the rights of those with whom municipal officials deal. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 384 n.2 (6th Cir. 2018) (citation omitted).

### I.A.   Rule 8, *Twombly*, and *Iqbal*

The City argues that the complaint fails to include "specific allegations . . . that would support a viable cause of action based on any of the four possible avenues for *Monell* liability." (ECF No. 38, PageID #408.) Based on the Rule 8 pleading standard, the City maintains that the specific facts of a policy or custom alleged come from the 1960s and 1970s and cannot be the moving force for the constitutional violations at issue in 1991.

This argument depends on focusing on particular allegations removed from their broader context and disregards the present procedural posture. Indeed, the City appears to acknowledge that the complaint contains the sort of detailed factual allegations Rule 8 requires by arguing that these events are simply too far removed in time from Mr. Jackson's case. (ECF No. 38, PageID #408.) As a matter of fact, the

City might be right. But the complaint contains more. It alleges that the Cleveland Police Department's extensive and well documented history of abuses created a culture of policing that persisted at least through Mr. Jackson's conviction in 1991, resulting in his wrongful conviction. ([ECF No. 1](), ¶¶ 232–33, PageID #40.) To bolster these allegations, Plaintiff points to specific instances of conduct. (*Id.*, ¶¶ 226–29, PageID #39.) Although undated, these allegations taken as a whole do not present the sort of conclusory or bare-bones recitations of the elements of a claim. As the City points out, Rule 8 requires more than that. And Plaintiff alleges more here.

Further, at the pleading stage, the non-moving party enjoys the benefit of reasonable and plausible inferences. As pled, the allegations the City targets give rise to competing inferences. As the City argues, the abuses outlined in the complaint might be too remote from Mr. Jackson's wrongful conviction such that, by then, the Cleveland Police Department no longer engaged in the sort of violations alleged. However, as pled, the complaint also gives rise to an inference that the sorts of abuses at issue were so deeply rooted that they persisted for years. At this stage of the proceedings, Plaintiff receives the benefit of this competing inferences.

At bottom, even following *Twombly* and *Iqbal*, Rule 8 requires that a complaint put the defendant on notice. Here, the allegations of the complaint provide the City with notice and "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555. By demanding more, the City seeks to transform the Rule 8 standard to require fact pleading. But *Monell* does not subject

8

a plaintiff to a higher pleading standard. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

### I.B. The Four Ways to Establish *Monell* Liability

Next, the City argues that the complaint fails to plead any of the four ways *Monell* allows for municipal liability. None has merit.

#### I.B.1. Official Policy

The City contends that the complaint fails to identify any "specific unconstitutional official policies" under which it might have liability. (ECF No. 38, PageID #408; *see also* ECF No. 41, PageID #504.) But "[a] city may be liable under *Monell* for a policy of permitting constitutional violations regardless of whether the policy is written." *Jackson*, 925 F.3d at 830 (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 480–81 (1986)). Here, the complaint alleges that the police had an official policy of regularly using various unconstitutional measures to secure convictions, including withholding exculpatory evidence, fabricating evidence, using suggestive identification procedures, and coercing and improperly questioning witnesses. (ECF No. 1, ¶¶ 208, PageID #31–32.)

Contrary to the City's claim, the complaint also ties these specific policies to Mr. Jackson's wrongful conviction. (*See id.*, ¶¶ 207 & 209, PageID #31 & #32.) For example, the complaint alleges that the prosecutor represented to the State trial court that there was no exculpatory evidence. (*Id.*, ¶ 30, PageID #6.) Assuming the truth of this allegation in the present procedural posture, and construing it in Plaintiff's favor, this fact gives rise to an inference that the Cleveland police withheld exculpatory evidence. Indeed, the complaint alleges as much later. (*See id.*, ¶ 69,

9

PageID #11.) As a second example, the complaint alleges that Mr. Jackson's wrongful conviction turned on the testimony of two witnesses (*id.*, ¶¶ 54 & 55, PageID #9), but the police used coercive and other constitutionally improper methods to question these witnesses and shape their testimony for trial (*id.*, ¶71, PageID #11).

### I.B.2. Decision Maker

With respect to the second avenue for municipal liability, that an official with final decision-making authority ratified illegal actions, the City seeks judgment on the pleadings on the ground that neither the mayor nor the director of public safety ratified the actions at issue. (ECF No. 38, PageID #408–09.) In doing so, the City relies on *Feliciano* to argue that the Sixth Circuit recognizes that only the mayor and director of public safety have final unreviewable authority for the City. (*Id.*, PageID #406.)

*Feliciano* involved drug tests for police cadets that the City of Cleveland chief of police ordered. In affirming summary judgment for the City on the claim that this testing violated the constitutional rights of certain cadets who tested positive for marijuana, the Sixth Circuit determined that, as a matter of State law, only the mayor or the public safety director had the authority to order the drug tests at issue. *Id.* at 655. *Feliciano* did not go further and hold that in *all* circumstances or for *any* alleged constitutional violation the City could only have *Monell* liability if one of these two officials ratified a particular policy or practice. Indeed, the perverse incentives of such a ruling are obvious. To the contrary, the Sixth Circuit recognizes that, in certain circumstances, police officers may have final, unreviewable authority to act, effectively, as a final policymaker unconstrained by the official policies of superiors.

10

*See, e.g.*, *Monistere v. City of Memphis*, 115 F. App'x 845, 852 (6th Cir. 2004) (applying Tennessee law). Under this standard, the complaint describes the longstanding policy of "massive power delegated to subordinate officers," including in policing at the individual level. (ECF No. 1, ¶ 215, PageID #34; *see also id.*, ¶¶ 214 & 215, PageID #33–35.) These allegations might not bear out in discovery or on the merits at trial. At the pleading stage, however, the complaint states a claim for *Monell* liability on this basis.

### I.B.3. Inadequate Training

Next, the City contends that the complaint fails to plead "relevant, specific failures in training and supervision, such as the subject matter of classes that should have been taught but were not," incorrect training materials, or the like. (ECF No. 38, PageID #409.) But the complaint identifies inadequate training and supervision on the particular issues of disclosure of exculpatory material, proper handling of such evidence, and conducting lineups and identifications, among other things—practices allegedly resulting in the wrongful conviction of Mr. Jackson. (ECF No. 1, ¶ 213, PageID #32–33.) It also includes other allegations, including a near-complete lack of in-service training for police officers. (*Id.*, ¶ 215(c), PageID #35.) These allegations sufficiently place the City on notice of the claims against which it must defend and for which it might have municipal liability under the governing pleading standard.

### I.B.4. Custom of Tolerating Rights Violations

As the City notes (ECF No. 38, PageID #409), Plaintiff primarily pursues liability under this aspect of the doctrine. Although the City argues there are "no

specific prior instances of unconstitutional conduct from any time frame relevant to Plaintiff's claims" (*id.*), in the present procedural posture Plaintiff enjoys the benefit of an inference that the custom of tolerating or the acquiescence in violations of constitutional rights was so firmly entrenched that it persisted well after the dates of the specific allegations to which the City points. Moreover, the complaint contains extensive and detailed allegations that the Cleveland police engaged in widespread and deeply rooted unconstitutional practices. Because the City focuses on the temporal proximity of the specific factual allegations, which the Court has already addressed, the Court will not restate or summarize those allegations here.

\*   \*   \*

For all these reasons, the Court determines that Plaintiff states a claim for municipal liability against the City on each of the theories available under *Monell*.

**I.C.   The City's Authorities**

To support its argument for dismissal, the City relies on *Sailor v. City of Cleveland*, No. 1:20-cv-660, 2021 WL 4472113 (N.D. Ohio Sept. 30, 2021). There, another wrongly convicted person who was exonerated after spending some fifteen years in prison made substantially similar allegations to those the City seeks to dismiss here. For many of the same reasons on which the City relies in this case, the *Sailor* Court granted judgment on the pleadings in favor of the City. *Id.* at \*1 & \*6.

But the City's reliance on *Sailor* is misplaced for three reasons. First, at bottom, the court granted judgment on the pleadings in *Sailor* because, "[t]o allow Plaintiff's Complaint to proceed as drafted[,] would subject the City of Cleveland to a theory of liability just because it employed Defendant Officers." *Id.* at \*6. The Court

12

agrees with *Sailor* that any such theory finds no support in the law. But the Court does not read the complaint here as asserting any such theory. Instead, the complaint alleges *Monell* liability based on properly pleaded facts that give rise to a plausible claim of liability that sits comfortably within the doctrine.

Second, the plaintiff in *Sailor* was convicted in 2003, but Mr. Jackson was convicted in 1991. Accordingly, the plaintiff in *Sailor* was twelve years more removed from the allegations that Plaintiff makes regarding the practices that allegedly resulted in his wrongful conviction. While the passage of time might have made the allegations less plausible or too remote in *Sailor*, in Mr. Jackson's case, as already explained, they give rise to inferences that he enjoys at the pleading stage.

Third, the City concedes in reply that the *Sailor* Court authorized the plaintiff there to file an amended complaint, with the exception of the "code of silence" allegations. *Id.* at *1 & *6. When the plaintiff did so, the court ruled that the amended complaint could withstand a motion to dismiss under Rule 12(b)(6). *Sailor v. City of Cleveland*, No. 1:20-cv-660, 2022 WL 405346, at *3 (N.D. Ohio Feb. 10, 2022).

In addition to *Sailor*, the City relies on a lengthy string cite of cases as additional authority that the allegations it attacks are too remote in time from Mr. Jackson's wrongful conviction and cannot, as a matter of law, state a claim. (ECF No. 38, PageID # 410–12; ECF No. 41, PageID #505.) Some of these cases are inapplicable. *See, e.g.*, *Muniz-Muniz v. United States Border Patrol*, 869 F.3d 442, 447 (6th Cir. 2017) (holding that remote use in the past of racial slurs where the

13

agency aggressively responded end that usage did not support injunctive relief); *Lewis v. City of Cleveland*, No. 1:13-cv-589, 2013 WL 5564146, at *2 (N.D. Ohio Oct. 8, 2013) (dismissing claim because "one isolated incident cannot be the basis for a pattern or policy claim"). And many are simply cases where courts dismissed *Monell* claims. In any event, every case rises or falls on its particular allegations, and the City's failure to develop a specific argument based on these authorities merits no further response from the Court.

## II.  Supervisory Liability

The City describes the claim Plaintiff asserts in Count 8 as "duplicative of Count 1–7" against the Defendant Officers. (ECF No. 38, PageID #402.) However, the City targets only Plaintiff's *Monell* claim in its motion and does not advance any argument for judgment on the pleadings on Count 8. Therefore, the Court declines to address that count further.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the City of Cleveland's motion for judgment on the pleadings (ECF No. 38).

**SO ORDERED.**

Dated: August 18, 2022

                                      J. Philip Calabrese
                                      United States District Judge
                                      Northern District of Ohio